UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PROFADE APPAREL, LLC,<br><br>                                    Plaintiff,<br><br>v.<br><br>ROAD RUNNER SPORTS, INC.; and<br>ROAD RUNNER SPORTS RETAIL,<br>INC.,<br><br>                                    Defendants. | Case No.:  18cv1254-JAH (MDD)<br><br>**ORDER GRANTING DEFENDANTS'<br>MOTION TO DISMISS [Doc. No. 5]** |

## **INTRODUCTION**

Pending before the Court is Defendants Road Runner Sports, Inc. ("RRS") and Road Runner Sports Retail, Inc. ("RRSR") (collectively "Defendants") motion to dismiss Plaintiff Profade Apparel, LLC's ("Plaintiff") trade secret misappropriation, trade dress, and conversion claims. *See* Doc. No. 5. Plaintiff filed a response to Defendants' motion and Defendants filed a reply. *See* Doc. Nos. 6, 7. Having carefully considered the pleadings in this action, and for the reasons set forth below, the Court hereby **GRANTS** Defendants' motion to dismiss.

## **BACKGROUND**

In or around June 2015, Defendants requested Plaintiff design and develop a "new and proprietary sock" to replace a sock that Defendants carried for years. [1] Doc. No. 1 at 3.

---

[1] On at least two occasions prior to the June 2015 request, Defendants had asked Plaintiff "to establish production of and to supply socks" to Defendants. Doc. No. 1 at 3.

From approximately June 2015 to March 2017, Defendants' employees represented that Plaintiff would be compensated for the design, development, production, and supply of the "new and proprietary sock" through the number of bulk orders Defendants would place for the "Trigonomic Arch Support Sock" ("Trigonomic Sock"). Doc. No. 1 at 4. Pursuant to Defendants' request, Plaintiff independently designed, developed, and named the Trigonomic Sock at a "significant expense," and without any assistance from Defendants. *Id.* Plaintiff relied on these representations in deciding to enter into a vendor agreement with Defendant RRS for the design and development of the Trigonomic Sock ("Contract"). Doc. No. 1 at 5. Both parties signed an addendum to the Contract in April 2016 which includes a Confidentiality Agreement. Doc. No. 1-2.

In or around April 2016, Defendants placed an order of the Trigonomic Sock with Plaintiff. Doc. No. 1 at 5. Defendants placed additional small batch orders of the Trigonomic Sock in December 2016 and March 2017; however, they did not adhere to prior representations of ordering sufficient bulk orders to fully compensate Plaintiff. *Id*. Defendants proceeded to terminate communications with Plaintiff and used another vendor, RRSR, to produce replications of the Trigonomic Sock. *Id*. Plaintiff alleges Defendants violated the Contract by unlawfully utilizing Plaintiff's Trigonomic Sock design to have RRSR, a vendor other than Plaintiff, to manufacture replications for Defendants. *Id*.

On June 12, 2018, Plaintiff filed the instant action against Defendants ("Complaint"). Doc. No. 1. Plaintiff alleges the following causes of action: (1) copyright infringement; (2) trade secret misappropriation; (3) federal unfair competition; (4) California unfair competition; (5) breach of contract; (6) breach of contract - implied covenant of good faith and fair dealing; (7) breach of contract – *quantum meruit*; (8) concealment; (9) intentional misrepresentation; (10) negligent misrepresentation; (11) false promise; and (12) conversion. *Id*. On August 27, 2018, Defendants filed the pending motion to dismiss Plaintiff's trade Secret misappropriation, trade dress, and conversion

causes of action pursuant to Rule 12(b)(6) and Rule 8. Doc. No. 5. Plaintiff filed a response to Defendants' motion and Defendants filed a reply. *See* Doc. Nos. 6, 7.

### **LEGAL STANDARD**

Defendants seek dismissal pursuant to Rule 12(b)(6) and Rule 8. Rule 12(b)(6) tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law"). Further, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). A complaint may be dismissed, however, where it presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson*, 749 F.2d at 534. While a plaintiff need not give "detailed factual allegations," he must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007); *see also Pierce v. Wagner*, 134 F.2d 958, 959 (9th Cir. 1943); *Patten v. Dennis*, 134 F.2d 137 (9th Cir. 1943).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 547). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In other words, "the non-conclusory 'factual content' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). "Determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must assume the truth of all factual allegations and must construe all inferences from them in the light most

favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003); *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). When ruling on a motion to dismiss, the Court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the Court takes judicial notice. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). If a court determines that a complaint fails to state a claim, the Court should grant leave to amend unless it determines that the pleading could not possibly be cured by the allegation of other facts. *See Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995); *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

Rule 8 requires plaintiffs only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atlantic Corp.,* 550 U.S. at 555. Each allegation in the complaint must be "simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). A complaint may not be dismissed for violating Rule 8 simple because it is verbose or lengthy. *See Hearns v. San Bernardino Police Dep't,* 530 F.3d 1124, 1131-32 (9th Cir. 2008) (citations omitted). However, "the-defendant-unlawfully-harmed-me accusation[s]" and [a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft*, 556 U.S. at 678.

## DISCUSSION

### A.   Judicial Notice

Plaintiff has requested the Court to take judicial notice of the Copyright Registration enumerated in Plaintiff's Complaint and attached to Plaintiff's Opposition to Defendants' motion to dismiss. *See* Doc. No. 6-1 at 2. However, it appears the Court is being asked to take notice, not just as a government document, but to accept the material depicted truth of

the facts contained in that material. *Id.* The Court may take judicial notice of an adjudicative fact "not subject to reasonable dispute because it can be . . . accurately and readily determined from sources whose accuracy cannot be reasonably questioned." *See* Fed. R. Evid. 201; *Grason Elec. Co. v. Sacramento Mun. Util. Dist.,* 571 F. Supp. 1504, 1521 (E.D. Cal. 1983). Defendants dispute Plaintiff's request for the Court to take judicial notice of the Copyright Registration for the purpose of distinguishing the Trigonomic Sock's functional or utilitarian aspects of the materials depicted from the non-utilitarian or artistic design elements that are capable of protection. *See* Doc. No. 8. The Court agrees. Accordingly, the request for judicial notice is **DENIED**.

**B.  Trade Secret Misappropriation**

Plaintiff's second cause of action is a violation of the federal Defend Trade Secrets Act of 2016 ("DTSA").[2] Doc. No. 1 at 6. Defendant's argue that Plaintiff's DTSA claim fails because the existence of a trade secret is not sufficiently alleged. Doc. No. 5 at 8-9. The DTSA contains a federal private cause of action in favor of the "owner of a trade secret that is misappropriated." 18 U.S.C. § 1836(b)(1). To state a claim for trade secret misappropriation under the DTSA, a plaintiff must allege that: "(1) the plaintiff owned a trade secret; (2) the defendant[s] misappropriated the trade secret; and (3) the defendant[s'] actions damaged the plaintiff." *Alta Devices, Inc. v. LG Elecs., Inc.,* 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018) (citations omitted); *see also* 18 U.S.C. § 1839(5). The DTSA defines "trade secret" as "financial, business scientific, technical, economic, or engineering information" that "(A) the owner thereof has taken reasonable measures to keep … secret; and (B) … derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3).

---

[2] Note that Plaintiff alleges that Defendants engaged in trade secret misappropriation under 18 U.S.C. § 1831, *et seq.*, which was amended by the Defend Trade Secrets Act of 2016. *See* 18 U.S.C. § 1836.

Here, Defendants contend that Plaintiff's Complaint fails to provide facts alleging a specific trade secret. Doc. No 5 at 10. Defendants assert that the Complaint merely "provide[] conclusory and nebulous statements regarding its purported trade secret," and does not sufficiently notify Defendants of the boundaries of the alleged trade secret. Doc. No. 5 at 5. Plaintiff contends it is only required to generally disclose the misappropriated trade secret and not divulge into any details that would compromise its trade secret. Doc. No. 6 at 9-10. "A plaintiff need not spell out the details of the trade secret," but must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Alter Devices, Inc. v. LG Elecs., Inc.,* 343 F. Supp. 3d 868, 881 (N.D. Cal. 2018) (internal citations and quotations omitted).

Plaintiff's Complaint describes the trade secret information as "certain proprietary and confidential information regarding the development, design, and manufacture of the Trigonomic Arch Support Sock." Doc. No. 1 at 6. Plaintiff also asserts to have provided Defendants with a "roadmap" to producing Defendants socks. *Id.* In addition, Plaintiff's attached Exhibit A contains the Contract describing the types of confidential information the parties contemplated under the agreement. Doc. No. 1-2 at 5. The Contract describes a few of the confidential information as follows: Prototypes; Preproduction samples; Lab dips; Fabrics; Trims; and items related to the production of the Trigonomic Arch Support Sock. *Id.* at 2. Here, Plaintiff's Complaint and Contract merely provide a general high-level overview of Plaintiff's purported trade secret, but do not satisfy the Rule 8 pleading requirements. Plaintiff's assertion of "confidential information regarding development, design, and manufacture" do not provide the court or Defendants notice of the boundaries of the purported trade secret.

Plaintiff relies on *Yeiser Research & Development LLC v. Teknor Apex Co.* to claim that it has sufficiently pled a trade secret misappropriation under the DTSA. 281 F.Supp.3d 1021 (S.D. Cal. 2017). *See* Doc. No. 6 at 12. However, Plaintiff's case is dissimilar for

several reasons. First, the plaintiff's in *Yeiser* alleged a misappropriation of trade secrets under the Delaware Uniform Trade Secret Acts (DUTSA), and not the DTSA. *Yeiser*, 281 F.Supp.3d at 1043. Second, the court in that case found the plaintiff's trade secret allegations sufficient when plaintiff alleged three categories of trade secret information, including, among other things: "factual allegations describing how its concepts 'improved' on existing hoses in the market and identifies various attributes of its concept, including the use of protective sleeves at the connectors, a change in the design of the inner hose liner, and use of abrasion resistant castings." *Id.* at 1044. Here, Plaintiff provides conclusory allegations by stating "proprietary and confidential information" and a "roadmap" as the purported misappropriated trade secrets. Plaintiff's trade secret allegations are more similar to *Space Data Corp. v. X,* 2017 WL 5013363, at *1 (N.D. Cal. 2017). The plaintiff in that case claimed to identify the trade secrets at issue by alleging they involved "data on the environment in the stratosphere" and "data on the propagation of radio signals from the stratospheric ballon-based transceivers." *Id.* at *2. The court concluded that the "high-level overview" of the plaintiff's purported trade secrets were too vague. *Id.* Similarly, Plaintiff alleges no specific aspects or features of the Trigonomic Sock to sufficiently identify the trade secret at issue. The Court concludes that Plaintiff fails to provide facts that give rise to a plausible inference of the existence of a trade secret within the meaning of the DTSA.[3]

As such, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's DTSA claim with leave to amend.

## C. Trade Dress

Plaintiff's third cause of action seeks relief for unfair competition under 15 U.S.C. § 1125(a)(1) by alleging that its Trigonomic Sock contains "distinctive elements of non-functional trade dress protected under federal law." *See* Doc. No. 1 at 7. "In contrast to a

---

[3] The Court does not assess whether Plaintiff's allegations are adequate to support inferences of reasonable measures to keep the information secret, independent economic value derived from the information not being generally known, or harm from the alleged misappropriation. *See* § 1839(3)(A), (B).

trademark, 'trade dress' refers to the 'total image of a product' and may include features such as size, shape, color combinations, textures or graphics." *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.,* 4 F.3d 819, 822 (9th Cir. 1993) (citation omitted). In order to state a valid claim for relief, Plaintiff must show the alleged trade dress is (1) nonfunctional; (2) distinctive; and (3) creates a likelihood of confusion. *Id.* at 823.

### 1. Distinctiveness or Secondary Meaning

Defendants contend that Plaintiff's asserted trade dress is not inherently distinctive and has not acquired distinctiveness through secondary meaning. Doc. No. 5 at 13. "If a mark is inherently distinctive it need not be shown to also have a secondary meaning." *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.,* 4 F.3d 819, 824 (9th Cir. 1993). A trade dress is inherently distinctive if its "intrinsic nature serves to identify a particular source of a product." *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 768 (1992). The predominant test for evaluating inherent distinctiveness is whether "(1) the design or shape is common, basic shape or design; (2) it was unique or unusual in a particular field; and (3) it was a mere refinement of a commonly-adopted and well-known form of ornamentation for a particular class of goods which consumers view as mere ornamentation." *See Seabrook Foods, Inc. v. Bar-Well Foods, Ltd.,* 568 F.2d 1342 (C.C.P.A.1977).

Secondary meaning is defined as "the mental association by a substantial segment of consumers and potential consumers between the alleged mark and a single source of the product." *Levi Strauss & Co. v. Blue Bell, Inc.,* 778 F.2d 1352, 1354 (9th Cir. 1985) (internal quotations omitted). A plaintiff may allege secondary meaning through direct or circumstantial evidence. *See Express, LLC v. Forever 21, Inc.,* 2010 WL 3489308 (C.D. Cal. 2010). A plaintiff may also allege secondary meaning through "exclusivity, manner, and length of use, amount and manner of advertising, amount of sales and the number of customers, and plaintiff's established place in the market." *Cont'l Lab. Prod., Inc. v. Medax Int'l, Inc.,* 114 F.Supp.2d 992, 1000 (S.D. Cal. 2000).

Here, Plaintiff alleges the Trigonomic Sock is an inherently distinctive trade dress and is protected without secondary meaning. Doc. No. 6 at 16. Plaintiff contends that the

depictions of the Trigonomic Sock displayed on the copyright registration certificate provides a feature of the sock that constitute evidence of a trade dress. *Id.* However, Plaintiff has not provided any evidence or augment to support the "distinctive element" of the Trigonomic Sock. As discussed above, the Court denied taking judicial notice of the copyright registration and the registration as a government document alone does not provide any factual support as to whether the alleged trade dress is distinctive. Moreover, trade dress in product configuration, as those at issue in this case, can never be "inherently distinctive." *Wal-Mart Stores, Inc. v. Samara Bros., Inc.,* 529 U.S. 205, 213 (2000) (holding that a consumer's disposition to equate the features with the source does not exist since product designs almost always serve a different purpose other than source identification). As for the secondary meaning, Plaintiff fails to raise any facts to support the notion that the Trigonomic Sock has acquired distinctiveness through "secondary meaning" or that a customer recognized the sock as belonging to Plaintiff. *See PaperCutter, Inc. v. Fay's Drug Co.,* 900 F.2d 558, 564 (2d Cir. 1990). Plaintiff's Complaint does not allege sufficient facts from which a reasonable inference can be drawn to advance the theory that Plaintiff's trade dress acquired secondary meaning.

### 2. Non-functional

Defendants argue that Plaintiff's Trigonomic Sock is a functional item and that Plaintiff fails to identify which elements or features of the sock are allegedly considered non-functional. Doc. No. 5 at 13. Trade dress protection extends only to design features that are not functional. *See* 15 U.S.C. § 1125(a)(3). To determine whether a product's feature is functional, the court considers several factors: "(1) whether the design yields a utilitarian advantage, (2) whether alternative designs are available, (3) whether advertising touts the utilitarian advantages of the design, and (4) whether the particular design results from a comparatively simple or inexpensive method of manufacture." *Disc. Golf Ass'n, Inc. v. Champion Discs, Inc.,* 158 F.3d 1002, 1006 (9th Cir. 1998).

Here, Plaintiff does not allege any facts to support the non-functionality of its purported trade dress. Instead, Plaintiff provides a conclusory statement in its Complaint

contending that the sock "contains distinctive elements of non-functional trade dress." Doc. No. 1 at 7. Plaintiff does not allege that the design features distinguish the look of the Trigonomic Sock, but rather the design features were created to provide comfort to consumers. A product feature is considered "functional and cannot serve as a trademark if [the product feature is] essential to the use or purpose of the article…." *Qualitex Co. v. Jacobson Prods. Co., Inc.,* 514 U.S. 159, 165 (1995). The functional arch support feature in the sock constitutes the actual benefit a consumer gains in purchasing Plaintiff's Trigonomic Sock. Although Plaintiff is not required to plead "detailed factual allegations" in its Complaint, Rule 8 does require sufficient facts to "state a claim to relief that is plausible on its face," including how the trade dress is non-functional. *Iqbal,* 556 U.S. at 678 (citations omitted); *see also Deckers Outdoor Corp. v. Fortune Dynamic, Inc.,* 2015 WL 12731929, at *1 (C.D. Cal. May 2015) (holding that "Plaintiff's conclusory statement of non-functionality fails to sufficiently allege the element."). Plaintiff has not sufficiently alleged that its product design is non-functional. Accordingly, Plaintiff has failed to allege a non-functional trade dress.

### 3. Likelihood of Confusion

A trademark infringement plaintiff must also establish that defendants' alleged infringement is likely to cause consumer confusion. *Dep't of Parks and Recreation of the State of California v. Bazzar Del Mundo,* 448 F.3d 1118, 1124 (9th Cir. 2006). Likelihood of confusion exists whenever "consumers are likely to assume that a product or service is associated with a source other than its actual source because of similarities between the two sources' marks or marketing techniques." *Nutri/System, Inc. v. Con-Stan Indus., Inc.,* 809 F.2d 601, 605 (9th Cir. 1987) (citation omitted). At the pleading stage, a plaintiff fails to sufficiently allege the likelihood of confusion when the marks are patently dissimilar or the channels in which the marks are used are completely unrelated. *See RVCA Platform, LLC v. Nudie Jeans Co. AB,* 2008 WL 11337820, at *3 (C.D. Cal. Aug. 2008) ("[D]ismissal at the pleadings stage tends to be appropriate when it is clear both that the goods or services in question are not related and that confusion is not likely.").

While Plaintiff sufficiently alleges the goods are related, Plaintiff has not alleged any facts to supports its allegations of a likelihood of confusion. Plaintiff's Complaint provides a conclusory allegation that Defendants are likely causing confusion amongst consumers regarding the origin of the socks by placing their product on the market. Plaintiff is correct that the Ninth Circuits likelihood of confusion analysis focuses on "whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Rearden LLC v. Rearden Commerce, Inc.,* 683 F.3d 1190, 1214 (9th Cir. 2012) (citations omitted). However, Plaintiff has not alleged any facts to support the allegation, such as whether both parties products are marketed through the same channels of trade, advertised in the same mediums, or target the same customers. Although Plaintiff and Defendants socks appear to be relatively similar, Plaintiff has not adequately pled that the use is likely to cause customer confusion. Therefore, the Court finds Plaintiff has insufficiently alleged a likelihood of confusion.

Accordingly, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's trade dress claim with leave to amend.

**D. Conversion**

Defendants move to dismiss Plaintiff's conversion claim for failing to identify the alleged "proprietary property" at issue. Doc. No. 5 at 15. Defendants also contend that Plaintiff's failure to seek the return of any tangible property prevents Defendants from formulating a proper defense. *Id.* Conversion is the "wrongful exercise of dominion over the property of another." *Spates v. Dameron Hosp. Ass'n,* 114 Cal. App. 4th 208, 221 (2003). To state a claim for conversion, Plaintiff must allege: "(1) the plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the defendants' conversion by a wrongful act of disposition of plaintiff's property rights; and (3) damages." *Mindys Cosmetic, Inc. v. Dakar,* 611 F.3d 590, 601 (9th Cir. 2010).

Here, Plaintiff alleges that Defendants "intentionally interfered with [Plaintiff's] property by intentionally allowing another vendor access to [] information." Doc. No. 1 at 13. Although Plaintiff's opposition contends "intangible property, like designs and

manufacturing plans, are susceptible to conversion," Plaintiff's Complaint fails to identify the alleged "proprietary information" converted. Consequently, it is unclear what actions Defendants have taken that amount to a wrongful disposition of Plaintiff's property. *See e.g., Eunice v. United States,* 2013 WL 756168, at *5 (S.D. Cal. Feb. 2013) (granting Rule 12(b)(6) motion to dismiss conversion claim where the "[p]laintiff does not provide facts to support allegation as to each Defendant and each Defendant's role in the violation so as to give them notice under Federal Rule of Civil Procedure 8."). In accordance with the Courts finding of insufficient allegations to support trade secret misappropriation and trade dress violation causes of action, the Court adopts the similar reasoning here, and finds that Plaintiff has insufficiently alleged a conversion cause of action.

As such, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's conversion claim with leave to amend.

## CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED:

1. Defendants' Motion to Dismiss is **GRANTED.**

2. Plaintiff's Trade Secret Misappropriation, Trade Dress, and Conversion claims are **DIMISSED with leave to amend**.

3. Plaintiff may file an amended Complaint on or before October 14, 2020.

**IT IS SO ORDERED.**

DATED: September 2, 2020

_____
Hon. John A. Houston
United States District Judge